IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Tammy B.,[1] | ) | C/A No.: 1:21-814-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| Kilolo Kijakazi,[2] Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a final order pursuant to 28 U.S.C. § 636(c), Local Civ. Rule 73.01(B) (D.S.C.), the order of the Honorable Joseph Dawson, III, United States District Judge, dated April 8, 2021, referring this matter for disposition [ECF No. 11], and the Commissioner's motion to remand [ECF No. 16]. The parties consented to the undersigned United States Magistrate Judge's disposition of this case, with any appeal directly to the Fourth Circuit Court of Appeals. [ECF No. 9].

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Fed. R. Civ. P. 25(d), she is substituted for former Commissioner Andrew Saul as the defendant in this action.

Plaintiff filed this appeal pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act") to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). The Commissioner concedes Plaintiff's argument that the case should be reversed and remanded. [ECF No. 16]. The issue before the court is whether the case should be remanded for further administrative proceeding or an award of benefits. For the reasons that follow, the court grants the Commissioner's motion [ECF No. 16] and reverses and remands the case for further administrative proceedings.

I.    Relevant Background

    A.    Procedural History

On October 19, 2016, Plaintiff protectively filed applications for DIB and SSI in which she alleged her disability began on July 18, 2013. Tr. at 118, 119, 164–72, 173–80. Her applications were denied initially and upon reconsideration. Tr. at 122–26, 129–34. On July 18, 2019, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Ethan A. Chase. Tr. at 42–66 (Hr'g Tr.). The ALJ issued an unfavorable decision on October 9, 2019, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 24–41. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for

purposes of judicial review. Tr. at 1–7. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on March 22, 2021. [ECF No. 1].

B.    Plaintiff's Background and Medical History

1.    Background

Plaintiff was 49 years old at the time of the hearing. Tr. at 46. She completed the General Educational Development ("GED") tests, obtaining a high school equivalency certificate. *Id.* Her past relevant work ("PRW") was as a waitress and a dining room manager. Tr. at 47. She alleges she has been unable to work since July 18, 2013. Tr. at 166, 173.

2.    Medical History

On October 13, 2015, an MRI of Plaintiff's lumbar spine showed minimal degenerative changes at L4–5 and L5–S1. Tr. at 424.

Plaintiff followed up with Dr. Massey to review results of the MRI on October 20, 2015. Tr. at 410. Dr. Massey explained the MRI showed no evidence of significant degeneration, stenosis, herniation, or nerve compression. *Id.* He indicated he saw no explanation for Plaintiff's radiating leg pain and suspected it was muscular, as Plaintiff likely placed increased burden on her lower back to compensate for her neck problems. *Id.*

On November 12, 2015, Plaintiff complained of cramping and back pain that radiated through her right lower extremity and numbness and tingling

3

in her bilateral arms. Tr. at 406. Dr. Massey referred Plaintiff for electromyography ("EMG") and nerve conduction studies ("NCS") of the bilateral upper extremities ("BUE"). Tr. at 407. He indicated he considered Plaintiff's back issues to be related to her cervical spine. *Id.*

On December 11, 2015, EMG and NCS showed evidence of moderate bilateral C6, C7, and C8 radiculopathy. Tr. at 419.

Dr. Massey reviewed the EMG and NCS findings with Plaintiff on January 5, 2016, noting they showed bilateral C6 to C8 nerve root irritation and radiculopathy. Tr. at 403. He recommended repeat MRI of the cervical spine to evaluate the disc at C4–5. *Id.*

On January 19, 2016, the MRI of Plaintiff's cervical spine showed postsurgical changes at C6–7 with degenerative disc disease ("DDD") above greater than below the fusion; moderate narrowing of the spinal canal at C4–5 and C5–6 with trace retrolisthesis at C5–6; most significant foraminal narrowing at C5–6 on the left with moderate-to-severe left foraminal narrowing and suspected compression of the existing left C6 nerve root; and less-pronounced narrowing at other levels. Tr. at 413.

Plaintiff followed up with Dr. Massey to discuss the MRI results on January 29, 2016. Tr. at 397. She reported numbness and tingling in her bilateral arms and back pain that radiated down her right leg with numbness and tingling in her toes. Tr. at 399. Dr. Massey noted the MRI showed

worsening stenosis at C4–5 and C5–6. Tr. at 400. He explained the findings were consistent with Plaintiff's worsening symptoms. *Id.* He discussed conservative and surgical treatment options, but concluded surgery was necessary. *Id.* Plaintiff opted to proceed with surgery. *Id.*

Plaintiff reported worsening back pain and radiating right leg pain in a sciatic distribution to the foot with associated cramping on February 25, 2016. Tr. at 395. She indicated intramuscular steroid injections had been ineffective. Tr. at 395–96. Dr. Massey noted the workers' compensation provider had authorized Plaintiff to proceed with neck surgery. Tr. at 396. He observed Plaintiff to be tender over the bilateral cervical paraspinals. *Id.* He indicated Plaintiff should participate in physical therapy pending neck surgery. *Id.*

Plaintiff presented to physical therapist Liesel M. Barker ("PT Barker") for an initial evaluation on February 25, 2016. Tr. at 430. PT Barker noted Plaintiff's doctor had imposed a 10-pound lifting restriction. *Id.* She observed 4+/5 BUE strength on manual muscle testing and decreased range of motion ("ROM") of the cervical spine. Tr. at 430–31. She recommended skilled physical therapy to decrease pain, improve function, and increase strength and ROM. Tr. at 431. Plaintiff subsequently participated in 12 physical therapy sessions. Tr. at 435–69.

On April 6, 2016, Gene M. Massey, M.D. ("Dr. Massey"), performed anterior cervical discectomy and fusion ("ACDF") at Plaintiff's C4–5 and C5–6 levels; removal of hardware and anterior cervical instrumentation at C6–7, anterior cervical interbody cage placement at C4–5 and C5–6; and anterior cervical instrumentation from C4 through C6. Tr. at 342–44.

Plaintiff presented to physician assistant Janelle A. Morgan ("PA Morgan") for a postoperative visit on April 21, 2016. Tr. at 384. She reported numbness in her fingers, trapezial pain, and concern as to ROM of her neck. Tr. at 386. PA Morgan observed swelling, limited active and passive ROM, and noted Plaintiff was not neurovascularly intact. *Id.* She indicated Plaintiff's wound was clean, dry, and had no signs of drainage or infection. Tr. at 386–87. PA Morgan consulted with Dr. Massey, who recommended they give it more time. Tr. at 387.

Plaintiff reported arm pain on exertion, muscle weakness, back pain, swelling in the extremities, numbness, and migraines on May 31, 2016. Tr. at 383. Dr. Massey indicated Plaintiff was progressing well, despite some paresthesia in her hands. *Id.* He prescribed Norco 7.5-325 mg every six hours and Terocin patches for neck pain. Tr. at 384.

On July 12, 2016, Plaintiff reported increased pain following coughing spells due to an upper respiratory infection. Tr. at 380. She described pain in

her neck that radiated to her right shoulder and caused numbness and tingling in her bilateral hands. *Id.*

Plaintiff presented to physical therapist Brenden M. Blaschke ("PT Blaschke") for a physical therapy evaluation on August 16, 2016. Tr. at 473. PT Blaschke noted Plaintiff had a five-pound lifting restriction per her doctor's order. *Id.* He observed reduced cervical ROM and decreased sensation to light touch on the right from C5 to C8 and on the left at C4–5. Tr. at 474. He recommended physical therapy three times a week for six weeks to decrease pain, improve function, increase strength and ROM, return Plaintiff to her premorbid state, and allow her to return to work. Tr. at 474. Plaintiff followed up for 12 visits and demonstrated moderate improvement in active ROM and a mild decrease in guarding, although she continued to be weak and guarded with cervical movements. Tr. at 479–521.

Plaintiff endorsed numbness and tingling along the back of her neck, neck pain, and BUE symptoms on August 23, 2016. Tr. at 377. Dr. Massey noted examination of both upper extremities showed 5/5 strength in the deltoids, biceps, triceps, wrist extensors, wrist flexors, and intrinsics. *Id.* He indicated Plaintiff had intact sensation from C5 to T1, negative Hoffman's sign, and 2+ radial pulses. *Id.* He instructed Plaintiff to continue physical therapy and medications. Tr. at 378.

Plaintiff reported numbness and tingling along the back of her neck, neck pain, and numbness in her arms on September 27, 2016. Tr. at 374. Dr. Massey recommended a functional capacity evaluation, prescribed Mobic, and refilled Gabapentin and topical analgesic patches. Tr. at 375.

Plaintiff presented to Stephen E. Boatwright, M.D. ("Dr. Boatwright"), for an initial consultation on January 30, 2017. Tr. at 597. She reported lower back pain and neck pain with limited ROM and frequent loss of feeling in her right arm. Tr. at 598. She indicated she performed minimal activities of daily living ("ADLs") and often took breaks. *Id.* She noted her pain was increased by prolonged walking, standing, and sitting with her head tilted down. *Id.* Dr. Boatwright observed tenderness at the base of the skull, trapezius, and cervical and lumbar spines. *Id.* He noted sensory changes to the right forearm in the C5–6 dermatome. Tr. at 600. He prescribed Neurontin 300 mg and Norco 7.5-325 mg, planned to titrate Gabapentin, and referred Plaintiff for physical therapy. Tr. at 597.

Plaintiff continued to complain of neck pain with BUE symptoms and back pain on February 13, 2017. Tr. at 640. Dr. Massey reviewed x-rays of the cervical spine and noted "some subsidence at the C5–6 level and fragmentation of the graft," but "[n]o evidence of hardware failure. Tr. at 641. He recommended EMG and NCS of both upper extremities to rule out peripheral compression as a cause of BUE symptoms. *Id.*

8

On February 15, 2017, Plaintiff presented to Kimberly A. Cecchini-Purgavie, D.O. ("Dr. Cecchini-Purgavie"), for EMG and NCS. Tr. at 637. Dr. Cecchini-Purgavie observed diminished reflexes in Plaintiff's bilateral biceps, brachioradialis, and triceps. Tr. at 637. On the right, she noted C5 decreased sensation of the outer upper arm, C6 decreased sensation of the radial forearm, thumb, and index finger, and C7 decreased sensation of the middle finger. *Id.* On the left, she recorded C5 decreased sensation of the outer upper arm and C6 decreased sensation of the radial forearm, thumb, and index finger. *Id.* Her impression was cervical root radiation on the right at C5, C6, and C7 and on the left in the C5–6 distribution. Tr. at 638.

Plaintiff presented to nurse practitioner Mary P. McKinney ("NP McKinney") in Dr. Boatwright's office on February 22, 2017. Tr. at 660. She reported increased neck and back pain. *Id.* NP McKinney increased Norco to 10-325 mg and advised against taking Valium and Flexeril together. *Id.*

On February 23, 2017, Dr. Massey indicated the EMG and NCS revealed persistent cervical nerve irritation from C5 through C7. Tr. at 635. He recommended a CT scan to rule out pseudoarthrosis and opined that it was likely chronic nerve damage due to Plaintiff's injury. *Id.* He also recommended an MRI of the lumbar spine. *Id.*

On February 27, 2017, an MRI of Plaintiff's lumbar spine showed lumbar spondylosis without significant central canal stenosis and small disc

protrusions into the right L4–5 and left L3–4 neural foramen with possible contact of the exiting left L3 nerve root. Tr. at 642.

Dr. Massey reviewed results of a CT scan of Plaintiff's cervical spine and an MRI of her lumbar spine on March 9, 2017. Tr. at 631. He noted the MRI of the lumbar spine showed mild, multilevel spondylotic changes and small areas of disc bulging, but no evidence of nerve compression, and the CT scan showed possible pseudoarthrosis at C5–6 with a possible broken screw at C5–6. *Id.* He recommended an external bone growth stimulator for possible delayed union and rheumatological evaluation for Plaintiff's continued neck and back pain, as he was concerned about a possible inflammatory arthropathy. *Id.*

On March 22, 2017, NP McKinney refilled Cyclobenzaprine HCl 10 mg and Norco 10-325 mg, prescribed Gabapentin 300 mg, and instructed Plaintiff to continue a home exercise plan for core stability and weight management. Tr. at 664. She noted sensory changes in the C5–6 dermatome of the right forearm. Tr. at 666.

Plaintiff followed up with NP Kinney to review the MRI and CT scan results on April 11, 2017. Tr. at 668. She reported pain and limited ROM in her neck with tensing up on the right side of her neck and loss of feeling in her right arm. Tr. at 669. NP Kinney indicated they would hold off on cervical epidural steroid injections, as Plaintiff continued to use the bone stimulator.

*Id.* She observed tenderness and reduced ROM in Plaintiff's lumbar and cervical spines and sensory changes in her right forearm in the C5–6 dermatome. Tr. at 669–70. She recommended diagnostic medial branch blocks ("MBBs") at L3, L4, and L5 and refilled Norco and Cyclobenzaprine. Tr. at 668.

Dr. Boatwright administered MBBs at Plaintiff's right L3, L4, and L5 levels on April 24, 2017. Tr. at 672–73.

Plaintiff presented to physical therapist Tracy Cobb ("PT Cobb") for an evaluation on April 25, 2017. Tr. at 685. She rated her pain as a nine and described being awakened by pain, difficulty finding a comfortable position, weakness, and loss of function and motion due to pain, stiffness, and swelling. *Id.* PT Cobb noted Plaintiff had a five-pound lifting limit. *Id.* She observed forward head and rounded shoulders posture, increased lumbar lordosis, guarded neck and trunk mobility, decreased sensation in the right C6 distribution, 3+/4 BUE strength, 4-/5 left lower extremity strength, 3+/5 right lower extremity strength, antalgic gait with guarded trunk and slow pace, and moderate tightness in the right trapezius and scalene. Tr. at 686. She noted pain and reduced ROM with all motion of the cervical and lumbar spines, BUE, and right lower extremity. *Id.* She recommended two physical therapy sessions per week for eight weeks. Tr. at 688.

On May 2, 2017, Plaintiff reported her pain decreased from an eight to a two to three on a 10-point scale in the four hours following the MBBs, providing 80% post-injection pain relief. Tr. at 674. She continued to report pain in her neck and right arm as an eight. *Id.* NP McKinney observed tenderness and limited ROM in Plaintiff's neck and back and sensory changes in the C5–6 dermatome of the right forearm. Tr. at 675. She recommended a second set of diagnostic MBBs at Plaintiff's L3, L4, and L5 levels. Tr. at 674. She indicated Plaintiff would be a candidate for radiofrequency ablation if she received 50–75% pain resolution from the MBBs. *Id.*

Dr. Boatwright administered MBBs at Plaintiff's right L3, L4, and L5 levels on May 8, 2017. Tr. at 677–78.

On May 11, 2017, Plaintiff reported back pain without radiation and neck pain with numbness in the bilateral arms in the C6 distribution. Tr. at 628. Dr. Massey recommended a CT scan to evaluate for pseudoarthrosis at the C5–6 level. Tr. at 628.

On May 15, 2017, Plaintiff reported 90% pain relief immediately following the most recent MBBs and described her pain as decreasing from a nine to a two to three in the four-hour period following the procedure. Tr. at 680. NP Kinney observed tenderness at the base of Plaintiff's skull, in the trapezius area, in the paraspinal muscles, and over the lumbar facets at L3,

L4, and L5. Tr. at 681. She noted limited ROM and swelling to the right side of the neck, increased pain on provocative testing to the lumbar spine, slightly flexed-forward gait, and sensory changes in the right forearm C5–6 dermatome. Tr. at 681–82. She recommended right lumber L3 through L5 radiofrequency ablation of the lumbar medial nerves of the facet joints. Tr. at 680.

On May 19, 2017, a CT scan of Plaintiff's cervical spine showed ACDF of the C4 through C6 levels with fractures through both C6 screws; a bone plug spacer at the C6–7 level; and no acute cervical fracture or bony central canal stenosis. Tr. at 295–96.

Plaintiff presented to Stephen Smith, M.D. ("Dr. Smith"), for a consultative medical evaluation on August 17, 2019. Tr. at 701–06. She endorsed cervical pain upon turning her head to the right, sitting for extended periods, and bending over, as well as radiating pain down her upper extremities that was aggravated primarily by lifting her arms above chest level. Tr. at 704. She also reported migraines that primarily occurred in rainy weather and upon looking at a computer for too long, reading a book, or looking down. *Id.* Dr. Smith observed Plaintiff to "walk with somewhat of an erect posture," to not move her arms normally, and to have little movement of the cervical spine during ambulation. *Id.* Plaintiff demonstrated cervical flexion to 20/50 degrees, extension to 10–20/60 degrees, lateral flexion to

20/45 degrees, right rotation to 20/80 degrees, and left rotation to 45/80 degrees. Tr. at 701. She had lumbar flexion to 60–70/90 degrees, left shoulder abduction to 120/150 degrees, right shoulder abduction to 90/150 degrees, left shoulder forward elevation to 120/150 degrees, right shoulder forward elevation to 90/150 degrees, and bilateral internal rotation to 45/80 degrees. *Id.* Plaintiff demonstrated normal ROM in all other areas. *Id.* She showed normal bilateral grip strength, slow gait, 4/5 upper extremity strength, 5/5 lower extremity strength, no atrophy in the upper or lower extremities, 2+ reflexes bilaterally, 2+ peripheral pulses bilaterally, and normal heel, toe, and tandem walk. Tr. at 702.

Dr. Smith completed a medical source statement of ability to do work-related activities (physical). Tr. at 695–700. He indicated Plaintiff could lift and carry up to 10 pounds frequently and 11 to 20 pounds occasionally. Tr. at 695. He estimated Plaintiff could sit for 15 minutes, stand for 20 minutes, and walk for 30 minutes at one time without interruption. Tr. at 696. His opinion as to Plaintiff's total abilities to sit, stand, and walk in an eight-hour workday is somewhat confusing, as he indicated abilities to sit for four minutes, stand for two minutes, and walk for two minutes, but likely intended to suggest Plaintiff could perform these activities for four hours, two hours, and two hours, respectively, given his prior response. *Id.* He anticipated Plaintiff would be reclining over any period she was not sitting,

standing, or walking. *Id.* He indicated Plaintiff could frequently perform reaching (other than overhead), handling, fingering, and feeling with the bilateral hands; never perform overhead reaching with the right hand; occasionally perform overhead reaching with the left hand; and occasionally push/pull with the bilateral hands. Tr. at 697. He noted decreased ROM in the shoulder, 4/5 strength, and good fine and gross manipulation skills in the hands. *Id.* He felt Plaintiff could frequently use her bilateral feet to operate foot controls. *Id.* He stated Plaintiff was able to perform heel/toe walk without much difficulty. *Id.* He opined that Plaintiff could never climb ladders, ropes, or scaffolds and could occasionally balance, stoop, kneel, crouch, crawl, and climb stairs and ramps. Tr. at 698. He noted Plaintiff had difficulty squatting. *Id.* He felt Plaintiff could occasionally be exposed to unprotected heights and moving mechanical parts; could frequently operate a motor vehicle; and could frequently be exposed to humidity, wetness, dust, odors, fumes, other pulmonary irritants, extreme cold, extreme heat, and vibrations. Tr. at 699.

C.     The Administrative Proceedings

1.     The Administrative Hearing

Plaintiff testified she last worked in early 2016. Tr. at 46. She stated she had worked at Compass Cove Resort as a server and manager for 17 years. Tr. at 47. She said she had stopped working because she was no longer

able to fulfill her job duties after she sustained injuries in a work-related car accident in 2013. *Id.* She noted subsequently undergoing three surgeries. *Id.* She said she could no longer lift over five pounds and felt severe pain when she walked. *Id.*

Plaintiff explained she underwent fusion surgery at C6–7 in 2014, but continued to have severe headaches, pain, numbness in her hand, and difficulty lifting over five pounds following the surgery. Tr. at 48. She indicated she received a series of injections and participated in physical therapy prior to undergoing a second surgery. *Id.* She stated she underwent fusion from C4 to C7 in 2016. Tr. at 50. She said she visited a pain management doctor for severe pain around June 2017 and underwent imaging that showed the titanium screws used to fuse her spine had collapsed. Tr. at 51. She confirmed she underwent a third surgery in October 2017 to remove the hardware. Tr. at 51–52.

Plaintiff testified her pain management physician had recently referred her to the surgeon because x-rays had shown collapse and narrowing at the C7–T1 level. Tr. at 52. She indicated the same surgeon had performed her first and second surgeries, but she had declined to return to him prior to the third surgery because he did not inform her about the screw malfunction. Tr. at 53. She stated Dr. Patel had performed her third surgery and she intended to return to him for consultation for a possible fourth surgery. *Id.*

Plaintiff testified her fingers on her right hand were completely numb and she lost feeling in her arms if she raised them above chest-level. Tr. at 55. She indicated she underwent NCS that showed neuropathy in her BUE. Tr. at 56. She said she would lose feeling in her right hand, causing her to have difficulty gripping items. *Id.* She stated she was unable to lift over five pounds due to extreme pain throughout her neck area. *Id.* She noted her grip was a little better on the left. Tr. at 57. She said she also had difficulty with fine manipulation like keyboarding, picking up small objects, buttoning buttons, and fastening zippers. *Id.*

Plaintiff stated she used multiple medications for pain and sleep, including Gabapentin, Percocet, Flexeril, Topamax, and Mobic. Tr. at 58. She indicated her medication impaired her concentration and prevented her from focusing for more than 10 to 15 minutes at a time. Tr. at 61–62.

Plaintiff said she continued to have severe lower back pain that caused difficulty sitting for long periods. Tr. at 59. She testified she had undergone five ablation procedures to her lower back, but most of her recent treatment had been focused on her neck. Tr. at 59–60. She indicated she was participating in water therapy because she had difficulty with regular physical therapy. Tr. at 60. She stated she visited her pain management physician monthly. *Id.*

During the hearing, the ALJ noted the record lacked evidence from the hardware revision surgery and follow up through the Medical University of South Carolina ("MUSC"). Tr. at 54. The ALJ indicated he would hold the record open for the outstanding evidence until after the consultative exam report was proffered to Plaintiff's attorney for review. Tr. at 54–55, 65.

2.    The ALJ's Findings

In his decision dated October 9, 2019, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2019.
2. The claimant has not engaged in substantial gainful activity since July 18, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
3. The claimant has the following severe impairment: a spine disorder (20 CFR 404.1520(c) and 416.920(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work (described as requiring lifting and carrying up to 10 pounds occasionally and lesser amounts frequently, sitting for 6 hours in an 8-hour day, and standing and walking occasionally (2 hours in an 8-hour day)) with occasional pushing/pulling, occasional postural activities except for no climbing of ladders, ropes, or scaffolds, frequent reaching, handling, fingering and/or feeling, no overhead reaching, and need to avoid excessive vibration.
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
7. The claimant was born on April 2, 1970 and was 43 years old, which is defined as a younger individual age 18–44, on the

alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45–49 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 18, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 29–37.

II. Discussion

Plaintiff raises three issues,[3] but the court considers only her argument that Listing 1.04 directed a finding she was disabled. She argues the case should be reversed and remanded for an award of benefits because she is disabled as a matter of law pursuant to Listing 1.04.[4]

---

[3] Plaintiff alleges the ALJ erred in assessing her RFC and in evaluating her allegations as to subjective symptoms, but she does not maintain these errors would direct reversal with remand for an award of benefits. *See* ECF No. 15 at 24–36. Although the undersigned has not specifically addressed these allegations of error, the ALJ should revisit them on remand.

[4] The Listing of Impairments has been revised since the ALJ issued the decision in this case. The former Listing 1.04(A) was revised as Listing 1.15, effective April 2, 2021, and requires additional criteria be met for a finding of disability. *See* 85 Fed. Reg. 78164-01, 2020 WL 7056412 (Dec. 3, 2020); *compare* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.04(A) (effective September

The Commissioner maintains the case requires reversal and remand for further administrative action.

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v.*

24, 2019 to November 25, 2019), *with* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.15 (effective August 2, 2021). The new listing is to be applied "to new applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date." *Id.* "This means that we will use these final rules on or after their effective date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand." 85 Fed. Reg. 78164, n.2.

*Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[5] (4) whether such impairment prevents claimant from performing PRW;[6] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. §§ 404.1520, 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)

---

[5] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. §§ 404.1525, 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or are "at least equal in severity and duration to [those] criteria." 20 C.F.R. §§ 404.1526, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[6] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520(h), 416.920(h).

(providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the

decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

Plaintiff argues the evidence directed a finding that she was disabled based on the paragraph A criteria in Listing 1.04. [ECF No. 15 at 16]. She maintains the ALJ erred in failing to adequately consider and apply the evidence to the listing. *Id.* at 15–23. She asserts the court should remand the case for an award of benefits because she is disabled as a matter of law pursuant to Listing 1.04 and further administrative proceedings would serve no purpose. *Id.* at 36

The Commissioner does not address whether the evidence indicates Plaintiff's impairment meets Listing 1.04 as a matter of law, but claims further administrative action is warranted. [ECF No. 16 at 2].

Step three of the sequential evaluation process requires the ALJ to identify relevant listings and compare their medical criteria with the symptoms, signs, and laboratory findings of the claimant's impairments, as reflected in the medical evidence. *Cook v. Heckler*, 783 F.3d 1168, 1173 (4th Cir. 1986); 20 C.F.R. §§ 404.1508, 416.908.

A finding of disability based on paragraph A of Listing 1.04 is directed if the claimant demonstrates she has a disorder of the spine (e.g., herniated

24

nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, DDD, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord with evidence of nerve root compression characterized by: (1) neuro-anatomic distribution of pain; (2) limitation of motion of the spine; (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss; and (4) if there is involvement in the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.04(A) (effective September 24, 2019 to November 25, 2019).

The claimant bears the burden of proving her impairment meets a listing. *See Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986). "For a claimant to show that his impairment matches a listing, it must meet all the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). However, the claimant is not required to prove the impairment met all the specified medical criteria in Listing 1.04(A) at the same time. *See Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013) ("We hold that Listing 1.04A requires a claimant to show only what it requires him to show: that each of the symptoms are present, and that the claimant has suffered or can be expected to suffer from nerve root compression continuously for at least 12 months. 20 C.F.R. § 404.1509. A claimant need not show that each symptom was present at precisely the same time—i.e., simultaneously—in order to

25

establish the chronic nature of this condition. Nor need a claimant show that the symptoms were present in the claimant in particularly close proximity.").

The Social Security Administration ("SSA") issued Acquiescence Ruling ("AR") 15-1(4) in response to the Fourth Circuit's decision in *Radford*. It explained it would use the following evaluation in claims in which the claimant resided in the Fourth Circuit:

> Adjudicators will decide whether the evidence shows that all of the medical criteria in paragraph A are present within a continuous 12-month period (or, if there is less than 12 months of evidence in the record, that all the medical criteria are present and are expected to continue to be present). If all of the medical criteria are not present within a continuous 12-month period, adjudicators will determine that the disorder of the spine did not meet the listing.
>
> If all of the medical criteria in paragraph A are present within a continuous 12-month period (or are expected to be present), adjudicators will then determine whether the evidence shows—as a whole—that the claimant's disorder of the spine caused, or is expected to cause, nerve root compression continuously for at least 12 months. In considering the severity of the nerve root compression, the medical criteria in paragraph A need not all be present simultaneously, nor in particularly close proximity. The nerve compression must be severe enough however, that the adjudicator can fairly conclude that it is still characterized by all of the medical criteria in paragraph A.

80 Fed. Reg. 57420, 2015 WL 5564523 (Sept. 23, 2015). Although AR 15-1(4) has subsequently been rescinded in response to the revision of the listed impairments, it was effective at the time of the ALJ's decision. *See* 85 Fed. Reg. 79063-01, 2020 WL 7209986 (Dec. 8, 2020) (rescinding AR 15-1(4) because the regulation that was the subject of the AR had been revised).

26

The ALJ concluded Plaintiff's impairment did not meet Listing 1.04, but misstated the listing's criteria, noting "the conditions have not resulted in an inability to ambulate effectively or to perform fine and gross movements effectively." Tr. at 30. He discussed the requirement pursuant to AR 15-1(4) and wrote:

> Applying Listing 1.04 using this criteria, I find no evidence of nerve root compression (1.04A), spinal arachnoiditis (1.04B) or lumbar spinal stenosis resulting in pseudoclaudication (1.04C). According to AR-15-1(4), a claimant need not show that each criteria in listing 1.04A was present at precisely the same time— i.e., simultaneously—in order to establish the chronic nature of his or her condition. Nonetheless, I find that the claimant's spine impairment does not meet or medically equal Listing 1.04A because one or more of the medical criteria of paragraph A—i.e., neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)—did not appear in the record at all during the period under consideration or it appeared for only discrete periods (AR 15-1(4)).

Tr. at 31.

Consistent with Plaintiff's argument, the record documents the presence of all the criteria for a finding of disability pursuant to Listing 1.04(A). An MRI of Plaintiff's cervical spine showed DDD with moderate-to-severe left foraminal narrowing and suspected compression of the existing left C6 nerve root. Tr. at 413. Neuro-anatomic distribution of pain was shown by evidence of radiculopathy on EMG and NCS and Plaintiff's repeated complaints of neck pain that radiated into her shoulder and throughout her

upper extremities. *See* Tr. at 380, 399, 403, 419, 430–31, 628, 695, 704.
Multiple records reflected observations of decreased ROM of Plaintiff's
cervical spine. *See* Tr. at 386, 474, 598, 670, 675, 681, 686, 701. Plaintiff's
providers documented decreased sensation during multiple visits. Tr. at 387,
474, 600, 637, 666, 686, 670, 675, 682, 686. PT Barker, PT Cobb, and Dr.
Smith recorded 4+/5, 3+/5, and 4/5 BUE strength, respectively. Tr. at 430,
686, 701. Thus, the record demonstrates that each of the symptoms required
under Listing 1.04(A) were present and that Plaintiff had signs of nerve-root
compression for greater than a 12-month period.

The ALJ engaged in no meaningful consideration of this evidence in
concluding Plaintiff's impairment failed to meet Listing 1.04(A). He merely
listed the requirements for a finding of disability under the Listing and
summarily concluded they were not met. His inadequate legal analysis
frustrates the court's evaluation of whether substantial evidence supports his
conclusion.

Having determined substantial evidence does not support the ALJ's
evaluation of Listing 1.04(A), the undersigned considers whether it is
appropriate to reverse and remand the case for an award of benefits or for
further administrative proceedings. "Whether to reverse and remand for an
award of benefits or remand for a new hearing rests within the sound
discretion of the district court." *Smith v. Astrue*, C/A No. 10-66-HMH-JRM,

2011 WL 846833, at *3 (D.S.C. Mar. 7, 2011) (citing *Edwards v. Bowen*, 672 F. Supp. 230, 237 (E.D.N.C. 1987)). "The Fourth Circuit has explained that outright reversal —without remand for further consideration—is appropriate under sentence four 'where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose'" and "where a claimant has presented clear and convincing evidence that he is entitled to benefits." *Goodwine v. Colvin*, C/A No. 3:12-2107-DCN, 2014 WL 692913, at *8 (D.S.C. Feb. 21, 2014) (citing *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974)); *Veeney ex rel. Strother v. Sullivan*, 973 F.3d 326, 333 (4th Cir. 1992). An award of benefits is appropriate when "a remand would only delay the receipt of benefits while serving no useful purpose, or a substantial amount of time has already been consumed." *Davis v. Astrue*, C/A No. 07-1621-JFA, 2008 WL 1826493, at *5 (D.S.C. Apr. 23, 2008) (citing *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir. 1984); *Tinnant v. Schweiker*, 682 F.2d 707, 710 (8th Cir. 1982). "On the other hand, remand is appropriate 'where additional administrative proceeding could remedy defects . . . .'" *Id.* (quoting *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989)).

Although the record documents the criteria required to meet Listing 1.04(A), it is inappropriate for the court to reverse and remand the case for an

award of benefits in this matter, given the lack of explanation for the ALJ's

consideration of Listing 1.04(A). In *Radford*, 734 F.3d 288 at 294–95, the

Fourth Circuit found the district court had chosen the "wrong remedy" in

remanding the case with instruction to award benefits. It explained:

> A necessary predicate to engaging in substantial evidence review
> is a record of the basis for the ALJ's ruling. *See Gordon v.
> Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984). The record should
> include a discussion of which evidence the ALJ found credible
> and why, and specific application of the pertinent legal
> requirements to the record evidence. *Hines v. Bowen*, 872 F.2d
> 56, 59 (4th Cir. 1989). If the reviewing court has no way of
> evaluating the basis for the ALJ's decision, then "the proper
> course, except in rare circumstances, is to remand to the agency
> for additional investigation or explanation." *Florida Power &
> Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

*Id.* at 295. It concluded the district court had abused its discretion in

directing an award of benefits rather than remanding for the ALJ to explain

his consideration of Listing 1.04, as the ALJ's decision "regarding the

applicability of Listing 1.04A [was] devoid of reasoning." *Id.*

The court further acknowledged there was conflicting evidence in the

record as to whether Radford satisfied the listing, noting "instances where

Radford showed limited motion of the spine on at least four occasions,

positive straight leg raises at least five times, and sensory or reflex loss on at

least three occasions," as well as "no weakness, sensory loss, or limitation of

motion during some examinations." *Id.* at 296. It considered remand for

further proceedings below the agency appropriate "[g]iven the depth and

ambivalence of the medical record and "the ALJ's failure to adequately explain his reasoning." *Id.*

As in *Radford*, the record before the court in this matter contains conflicting evidence as to whether Plaintiff met Listing 1.04. The evidence set forth above is consistent with the criteria required to meet the listing. However, the record also contains additional treatment visits in which normal findings were recorded. *See* Tr. at 377 (recording 5/5 strength in the deltoids, biceps, triceps, wrist extensors, wrist flexors, and intrinsics and intact sensation from C5 to T1), 383 (noting intact sensation from C5 to T1 and 5/5 strength in the deltoids, biceps, triceps, wrist extensors, wrist flexors, and intrinsics), 387 (reflecting 5/5 strength in the bilateral fingers, wrists, elbows, biceps, triceps, and deltoids), 600 (documenting no focal motor weakness in the upper extremities), 637 (observing 5/5 motor strength bilaterally at C5, C6, C7, C8, and T1), 666 (showing no focal motor weakness in the extremities), 670 (finding no focal motor weakness in the upper or lower extremities), 676 (indicating no focal motor weakness in the extremities), 682 (appreciating no focal motor weakness in the extremities), 702 (eliciting normal reflexes), 706 (failing to appreciate any sensory deficits). Additionally, this evidence has not been evaluated pursuant to AR 15-1(4) to determine whether all the criteria were present within a 12-month period

and whether Plaintiff's spine disorder caused nerve root compression continuously for at least 12 months.

The court further notes that the record appears to be incomplete. Although Plaintiff alleges a disability onset date of July 18, 2013, Tr. at 166, and testified to having undergone a first surgery in 2014, Tr. at 48, the earliest evidence documenting spinal impairment is dated October 13, 2015, more than two years later. *See* Tr. at 424. The record contains no evidence after May 2017, except for the report from the consultative exam, even though Plaintiff testified that she underwent a third surgery and five radiofrequency ablations and saw a pain management physician monthly leading up to the hearing. *See* Tr. at 51–53, 59–60. The ALJ specifically stated the following as to the missing records: "If it confirms what you were telling me, chances are pretty good I'll be able to find you disabled." Tr. at 54–55. Despite the ALJ's having left the record open for submission of additional evidence following the hearing and having stated he would be inclined to find Plaintiff disabled if the evidence confirmed her testimony, Plaintiff's former attorney failed to complete the record.[7]

---

[7] Plaintiff was not represented by her current counsel at the administrative hearing. *See* Tr. at 43 (reflecting "Jeffery Morris, Attorney for Claimant" in hearing transcript).

Given the presence of conflicting evidence, an incomplete record, and deficiencies in analysis of the evidence, it is necessary for the court to remand the case for further administrative proceedings.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned grants the Commissioner's motion [ECF No. 16] and reverses and remands this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

October 26, 2021
Columbia, South Carolina

Shiva V. Hodges
United States Magistrate Judge